CASE 94—ACTION BETWEEN MOLLIE B. STONESTREET AND OTHERS AND ELLA JACOBS AND OTHERS, AS TO THE OWNERSHIP OF A SPRING.—OCTOBER 11.

## Stonestreet, &c., v. Jacobs, &c.

APPEAL FROM CARROLL CIRCUIT COURT—JOHN M. LASSING, CIRCUIT JUDGE.

FROM THE JUDGMENT STONESTREET AND OTHERS APPEAL. AFFIRMED.

DEED—BOUNDARIES—STREAMS.

Under the call of a deed setting off as dower part of deceased's land which embraced a creek, "thence S., 87 W., 28 poles, to a large elm tree in the bank of L. creek; thence down said creek, with its meanders, S., 21 W., 48 poles; S., 63 W., 14 poles; N., 73 W., 16 poles, to a stake on the bank of the creek," the thread of the stream is the boundary, though the line from the tree to the stake run by the courses and distances, would not run in the creek at all.

H. G. BATTS, WINSLOW & HOWE, FOR APPELLANTS.

1. It is alleged in the petition and not denied that Mollie B. Stonestreet is the daughter of John T. Harris, Sr.

2. It is alleged and not denied that the land in controversy was formerly in Gallatin and is now in Carroll county.

3. It is alleged and not denied that the land was conveyed by Wood and Frank to the Harris heirs, including the plaintiff, in June, 1866.

4. The plaintiff's contention is that their tract includes the whole of Lick creek in which the spring is located and some fifteen or twenty feet on the Jacob's side.

5. Appellees' answer present but one single defense, that is adverse possession and that is not sustained by any evidence.

6. We submit that the plaintiff has shown by the evidence that she and those under whom she claims have been in the adverse possession of the land including the spring for more than forty years.

## AUTHORITIES CITED.

Russell v. Doyle, 84 Ky., 386; Church v. Halley, 10 R., 447; Flynn v. Sparks, 10 R., 960; Wait v. Gorer, 11 R., 751; Digman v. Elliott, 9 R., 982; Vaughn v. Foster, 20 R, 682; Cornish v. Falles, 20 R. 300; Fraley v. Peters, 12 Bush, 469; Walker v. Leslie, 90 Ky., 647; Sanders v. McCracken, Hardin, 258; Penrod v. Bruce, 22 R., 1699.

## J. S. GARNET & J. A. DONALDSON, FOR APPELLEES.

1. Plaintiff claims title and actual possession to 33⅓ acres of land in Carroll county west of a line running with the meanders of Lick creek on its eastern bank, including a spring therein.

2. Appellees deny that appellant had either title or possession of any part of said land east of the center of said creek, thus putting the burden on appellant.

3. In an action *quia timet* the plaintiff must have both title and actual possession.

4. Appellant has not testified to, or proven, a single act of ownership of said land or spring which would support a plea of adverse possession.

5. On the contrary, appellees have shown that they had the spring enclosed by a wire fence, and claimed it adversely at the time this suit was brought.

6. It is a well recognized rule of law in this State, that when the meanders of a stream are called for in giving the boundary to a tract of land the *filum aquae* of such stream is the true boundary of such land.

## AUTHORITIES CITED.

Packard v. Land Mining Co., 96 Ky., 252; Smith v. Gulleff, 9 R., 554; Smith v. White, 19 R., 803; Gatley v. Wilder, 12 R., 622; Campbell v. Disney, 93 Ky., 41; Whipple v. Earick, 93 Ky., 125; Ky. Stat., sec. 11; Berry v. Snyder, 3 Bush, 278; Kent, 3

vol., pp. 427, 434; Runion v. Alley, 19 R., 270; Am. & Eng. Ency.
of Law, 2d vol., 504; Ky. Lumber Co. v. Green, 10 R., 139;
Williamsburg Boom Co. v. Smith, 8 R., 369; Vaughn v. Foster,
20 R., 682; Hunter v. Witt, 21 R., 35; Webb v. Hynes, 9 B. M.,
389; 2 Blackstone, p. 4.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—AFFIRMING.

The question to be determined in this case is whether the
spring known in the record as the "Blue Lick Spring" is
on the land of appellant or that of appellee.   Both parties
claim under Robert Sanders, who died about the year 1850.
After his death, in a suit to settle his estate, 80 acres of the
improved land was laid off as dower to his widow, and the
remainder of the tract was sold for the payment of debts.
Appellant claims under the purchaser at the decretal sale.
Appellee claims a part of the boundary laid off to the widow
for her dower.   The court ordered all of the land sold at the
decretal sale, except that set apart to the widow for dower.
So the controversy here turns upon what was set apart
to the widow for her dower.   The boundary of this land,
as given in that proceeding, is as follows: "Beginning at
the mouth of the lane near the bank of Eagle creek; thence
with the lane N., 55 W., 105 poles, to a stake opposite the
house; thence S., 25 1-2 W., 12 poles, to a stake; thence
S., 87 W., 28 poles, to a large elm tree in the bank of
Lick creek; thence down said creek, with its meanders, S.,
21 W., 48 poles; S., 63 W., 14 poles; N., 73 W., 16 poles,
to a stake on the bank of the creek; thence S., 34 E., 120
poles, to a beech, elm, and sycamore in the bank of Eagle
creek; thence up Eagle creek, with its meanders, N., 63
E., 10 poles; N., 30 E., 58 poles; N., 58 E., 40 poles;
N., 41 E., 36 poles, to the beginning."    The spring
in controversy is in the bed of Lick creek, and near
the bank next to appellee, or the dower land, which for

convenience we will call the east bank. The contention of appellant is that the line runs from the elm tree the courses and distances given above to the stake on the bank of the creek. If run in this way, the line does not run in the creek at all, but on the east bank, and will not include the spring. The position of appellee is that the thread or center of the stream is the line between the parties, and that the spring, being on the east side of this line, is her property. The whole case turns on the proper construction of the following calls in the deed: "Thence S., 87 W., 28 poles, to a large elm tree in the bank of Lick creek; thence down said creek, with its meanders, S., 21 W., 48 poles; S., 63 W., 14 poles; N., 73 W., 16 poles, to a stake on the bank of the creek." In Berry v. Snyder, 3 Bush, 266, 96 Am. Dec., 219, it was held that the owner of land bounding on the Ohio river held to the center of the stream, and in that case the court quoted with approval from 3 Kent's Commentaries, 527, as follows: "Where a stream is used in a grant as a boundary or monument, it is used as an entirety to the center of it, and to that extent the fee passes." The calls of the patent considered in that case were substantially the same as the calls in the case before us. This case was followed and approved in Williamsburg Boom Co. v. Smith, 84 Ky., 372, 8 R., 369, 1 S. W., 765, and in Kentucky Lumber Co. v. Greene, 87 Ky., 257, 10 R., 139, 8 S. W., 439. These cases were since followed in Sweatman v. Holbrook, 38 S. W., 691, 39 S. W., 258, 18 Ky. Law Rep., 870, Runion v. Alley, 39 S. W., 849, 19 Ky. Law Rep., 268, and Vaughn v. Foster, 47 S. W., 333, 20 Ky. Law Rep., 682. Appellant relies upon the cases of Sanders v. McCracken, Hardin, 258, and Fleming v. Kenney, 4 J. J. Marsh., 155, but both of these cases were made to turn on the language of the grant, and the facts there shown. In

the case before us there was a division of the lands of Robert
Sanders. Part of the land was laid off to the widow and
part was sold. If no part of Lick creek or Eagle creek
passed to the widow, then she was cut off from both of
these streams for water. In making the boundaries on either
side of her tract, the commissioners had in view that the
two streams would make a convenient boundary, and there
is no reason why they should have had in mind allotting
the entire stream to either of the owners. On the con-
trary, we think it reasonably clear that they contemplated
that the stream should be the boundary, and in that event
the thread of the stream is the dividing line. This con-
clusion is in accord with the current of authority.

In 3 Washburn on Real Property, side page 632, it is
said: "In respect to streams and rivers which are not
navigable—that is, in which the tide does not ebb and flow
—the rule seems to be universal that describing land as
running to the stream or the bank, and by it or along the
stream or the bank, extends to the middle or thread
of the stream—the *filum aqua*—unless there is some-
thing in the description clearly excluding the inter-
mediate space between the edge or bank of the stream and
its thread." So in 5 Cyc., the rule is thus expressed: "A
grant or conveyance of land bounded by a non-navigable
stream carries with it the bed of the stream to its center,
unless a contrary intention is manifest from the grant or
conveyance itself." Page 897. "The stream, or other body
of water, and not the meander line, as actually run on the
ground, is the boundary." Page 899. "The mere mention
of a monument on the bank of a stream as the place of be-
ginning or end of a line is not of itself sufficient to control
the ordinary presumption that the grantee will hold to the
thread of the stream, or in the case of navigable rivers in

some jurisdictions to low water mark. Where, however, the intention is clearly apparent to limit the boundary by the monument, the instrument will be so construed." Page 904. The later cases decided by this court, above cited, are in conformity with these principles, and the older cases, which are relied on for appellant, are to be considered as resting on the ground that the intention was there apparent to limit the boundary by the monument. Cockrell v. Mc-Quinn, 4 T. B. Mon., 61, and Bruce v. Taylor, 2 J. J. Marsh., 160. We therefore conclude that the thread of the stream is the boundary line between the parties, and that as the spring was on the appellee's side of that line, it was properly adjudged to be her property.

Judgment affirmed.

On rehearing by Judge Barker:

The plaintiff in her petition set out that she owned a tract of land which embraced the entire bed of Lick creek. The defendant denied the allegation of the petition, but did not make her answer a counterclaim. The spring which was in controversy lay on the defendant's side of the creek. The circuit court dismissed the plaintiff's petition, and that judgment was affirmed by this court on the ground that the center of the stream was the dividing line between the parties. There is not a syllable in the record to show that the defendant has any title beyond this line. There is nothing in the record upon which a judgment in favor of the plaintiff beyond this line could be predicated. The answer was not made a counterclaim, and there was no proof of any trespass by the defendant beyond the center line of the stream. The judgment in favor of the defendant simply establishes the center of the stream as the dividing line be-

tween the parties, for that judgment must be read in connection with the opinion of this court affirming it.

Petition overruled.