# WILLIAM G. WHITE v. RUFUS C. JEFFERSON and Others.[1]

January 14, 1910.

Nos. 16,094—(147).

**Dedicated Street — Vacation Before Transfer — Conveyance — Presumption.**

The strip of land here in controversy was originally the part of a dedicated street which lay between two corner lots. That street was vacated. That fact appeared of record. Defendants afterwards acquired from the original proprietor who made the plat title to the two lots. Subsequently plaintiff purchased the strip from the same person. In an action to determine adverse claims it is *held:*

1. When the owner of the land executes a plat thereto, he dedicates to the public an easement of way in the streets there appearing and retains the fee therein subject to such easement.

2. That owner may, in the exercise of his right of freedom of contract, sell a lot abutting on a street, and part with or reserve the fee to the middle of the street, subject to the public easement.

3. What disposition he has in fact made, and what his grantee receives, depends upon the intention of the parties. In the absence, however, of expression or necessary implication from peculiar circumstances to the contrary, the law from many considerations of public policy imputes or presumes an intention to pass to the grantee title to the lot and to the middle of the adjoining street, subject to the easement of public way.

4. Where, however, a street has been legally vacated before any lot has been transferred, the reasons for imputing or presuming intention have ceased. The proprietor holds the land free from the easement as land when he parts with the lots abutting it. Title to a tract correctly and accurately described by metes and bounds on the plat passes, but not to a parcel distinct from it.

5. Plaintiff acquired title to the strip here in controversy, if his deed from the original proprietor was valid. Whether it was valid is left to be determined on the new trial, necessarily granted.

Action in the district court for Ramsey county to determine adverse claims to a parcel of land. The answer alleged that Rufus C.

[1] Reported in 124 N. W. 373, 641; 125 N. W. 262.

Jefferson and E. H. Hoard were the owners thereof in fee simple. The facts were stipulated and it appeared from the stipulation that defendants Jefferson and Hoard became owners of lots 23 and 24 under execution sales, tax deeds, an administrator's deed and an action to determine adverse claims, in all of which proceedings and deeds the property was described as lots 23 and 24 Hewitt's Outlots, First Division, "according to the recorded plat of said Hewitt's Outlots, First Division, on file and of record," etc. The case was submitted upon the pleadings and the stipulation of facts (which provided that the court was to be at liberty to draw the same inferences from the facts that it might properly draw if the same were produced in evidence on the trial) to Bunn, J., who ordered judgment in favor of defendants. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*William G. White,* for appellant.

A conveyance of land bounded on an existing highway vests in the grantee the fee to the center of the highway, solely because the court presumes that such is the intention of the parties to the instrument. This intention is to be ascertained in each particular case from the language of the conveyance and from the facts and circumstances surrounding the transaction. Elliott, Roads & Streets, § 723; In re Robbins, 34 Minn. 99. If a deed of conveyance to land bordering on the highway carries title to the center of the highway, solely because of this presumption, then there would seem to be no escape from the logical conclusion that when the facts which give rise to the presumption cease to exist, the presumption also falls to the ground.

A conveyance of land bounded by an existing highway vests in the grantee the fee to the center of the highway, because such is presumed to be the intention of the parties and not because the land upon which the highway is located is "appurtenant" to the land upon which it borders, nor because it is "a part thereof." The highway is a distinct and separate parcel of land and one tract of land can never be appurtenant to another tract. Harris v. Elliott, 10 Pet. 25, 54; Investment Co. of Philadelphia v. Ohio & N. W.

Ry. Co., 41 Fed. 378; Humphreys v. McKissock, 140 U. S. 304. Nor does the soil upon which a vacated highway was formerly located become a part of the adjoining property.

· A conveyance of land which is described either by definite metes and bounds, or by lot and block of a recorded plat, which adjoins other land of the grantor that had formerly been part of a street or highway conveys no portion of the tract which had formerly constituted such street or highway. It will not be presumed that the grantor intended such conveyance to vest in the grantee any part of the former highway, and a presumption that the grantee takes title in fee to the center of the street is an impossible one because there is no street or highway to which such presumption can apply. Harris v. Elliott, supra; Brown v. Taber, 103 Iowa, 1; Sanchez v. Grace, 114 Cal. 295; Chicago v. Des Moines, 97 Iowa, 25; Overland v. Alpenfels, 30 Colo. 163. In Atchison v. Patch, 28 Kan. 470, 473, the court decided only that the right to use a vacated public street passed to the purchaser from the adjacent lot owner by a conveyance or other proceedings in which the lot was designated by its number on a recorded plat. Challiss v. Atchison, 45 Kan. 398.

*John E. Stryker,* for respondents.

The idea of an intention in the grantor to withhold his interest in the road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed. It would require an express declaration to sustain such an inference. 3 Kent, Com 349 (in later editions 433). Where a map or plat is referred to in a conveyance it becomes, for the purpose of identifying the land conveyed, a part of the deed. And if a natural monument like a stream, or an artificial monument like a street, is shown upon the plat, distances must yield to such a monument which is by reference described in the deed. Nicolin v. Schneiderhan, 37 Minn. 63.

In Minnesota the dedication of property for use as a street does not pass fee title to the public or municipality. Schurmeier v. St. Paul & Pac. R. Co., 10 Minn. 59 (82).; Railroad Co. v. Schurmeier, 7 Wall. 272. It is also a well-understood doctrine in this state that

in case of the conveyance of a lot abutting on a street, the purchaser is presumed to take the title to the middle of the street, and he takes this as a part of the lot. Gilbert v. Emerson, 60 Minn. 62, 67; Wait v. May, 48 Minn. 453, 461. Appellant seeks to place a limitation upon the doctrines thus settled in this state and he supports his position, neither by analogy to our law nor by a suggested development in accordance with the spirit of our decisions, but by citing cases from other jurisdictions, and the cases which he thus cites either construe statutes unlike ours, or the questions determined by the foreign courts were wholly unrelated to the issues at bar.

A party purchasing real estate according to a plat, which bounds the tract conveyed by a highway, acquires not only a right to access, but a right to light and air across such highway. Adams v. Chicago, B. & N. R. Co., 39 Minn. 286; Lamm v. Chicago, St. P., M. & O. Ry. Co., 45 Minn. 71. It is doubtful if the vacation of a street, either before or after a conveyance in which its center line is made a boundary, results in depriving the purchaser of such right to light and air. Assume that a building had been erected on one of the lots purchased by defendants, and that one of the walls perforated by windows had been upon the line of La Salle street; the effect of the vacation would have been, if appellant is correct, that the owner of La Salle street, segregated from the abutting lots, would have the right (prescription excepted) to erect another structure immediately against the wall of such existing building and thus cut off its light and air. It is no answer to say that there was no building upon this lot, for a transfer, according to a recorded plat, conveys the same land in the case of improved property as of unimproved property. This illustration merely suggests the inconvenience of the shifting boundary which would result if appellant's contention were sustained. Tested by principle and precedent the common boundary line of defendants' lots was at the time of platting and ever since has been the center of La Salle street.

The charter provisions in force at the time of the vacation proceedings, viz., January 15, 1889, were substantially different from those now in force, and did not require the record of such proceedings in the office of the register of deeds, as a condition of the effective-

ness or validity of a street vacation. Sp. Laws 1874, c. 1, subc. 4, § 8. Under the charter provisions then in force, a transcript of the vacating resolution must have been filed for record and recorded in the office of the register of deeds in order to afford constructive notice of the vacation. When the stipulation of facts upon which the controversy depends is read in the light of the charter provisions in force on January 15, 1889, viz., Sp. Laws 1874, c. 1, subc. 4, § 8, the premises upon which the court based its decision fall and with the premises its conclusion.

The parties did not in fact contract, as stated by the court, "with reference to a record showing that no street existed." They contracted with reference to a plat which bounded the premises conveyed by a street. There is no justification for reading notice of vacation into their contract, and in fact, no room for construction, for the terms of the contract are so plain and simple that "he who runs may read."

The doctrine of Nicolin v. Schneiderhan, supra, controls the facts stipulated. The principle there stated, as to the effect of a reference in a deed to a plat, has never heretofore been questioned by this court, and the substantially universal opinion of the bar has been that it applies to a situation like that here presented.

The stipulation of the parties makes it clear that the premises in controversy were part of the estate of Allie Hewitt, deceased, and subject to sale to pay her debts. Her administrator sold lots 23 and 24 to the respondents. The silence of the record relative to any other sale of the premises in question by the administrator is strong evidence that he did not intend to segregate the strip of land covered by La Salle street from the abutting lots.

JAGGARD, J.

Allie Hewitt duly platted certain land belonging to her as "Hewitt's Outlots, First Division." The short side of lots 23 and 24 fronted on one street and the long side abutted La Salle street. In 1889 La Salle street was duly vacated by the city council. The portion of that street between the lots is the land the title to which is here in controversy. Allie Hewitt remained owner of the lots

until in 1892, when defendants acquired a fee-simple interest in said lots through deeds and proceedings in which the property was described as lots 23 and 24, Hewitt's Outlots, First Division, according to the recorded plat thereof. In 1898 Allie Hewitt died. In 1906 one Barnum, "in his capacity as trustee under the last will and testament of Allie Hewitt, deceased," executed to plaintiff a deed which purported to convey, inter alia, that portion of La Salle street, so called, lying between lots 23 and 24. The trial court found and ordered judgment for defendants in this an action to determine adverse claims. This appeal was taken from its order denying plaintiff's motion to vacate and set aside the decision and for a new trial.

1. The first question presented by the record concerns the title to the strip between the lots which had been a part of the street before its vacation.

Defendants' position is this: "That, had the respondents acquired lots 23 and 24 before the vacation of La Salle street, the boundary of the lots would have been the center line of the street, and that, if the street had been vacated after such purchase of the lots, their common boundary would still have been the center of the street, relieved, of course, of the public easement. * * * Now, if the platted boundary, which is that of the respondents' conveyances, was the center line of the street, and if vacation of the street after their acquisition of the property would not have changed that boundary, upon what principle has the area of the lots been diminished?"

On principle the answer is clear. In the first case at the time of the transfer the lots would front on a street; in the second case they would not front on a street. A conveyance according to a plat is a conveyance by recorded metes and bounds, except where the lots front on a street. Defendants' second proposition assumes the matter in controversy. The conclusion of course follows. But there is no argument. The fallacy of the defendants lies in postulating that the vacation of the street was without legal effect.

It is true that in cases presenting the question whether a grant according to a recorded plat of premises abutting on a street conveyed only the land described in the plat by metes and bounds, or also the fee to the middle of the street subject to easement of public use, the

opinions of the courts have often contained utterances to the effect that the fee title to the middle of the street was a necessary or integral part of the lot indicated by the plat; that interest was part and parcel of the lot conveyed; that the center line of the street is a boundary line of abutting lots; that the grantor is estopped from denying a conveyance of the fee subject to the easement, and the like. Such general statements must, of course, be limited to the particular facts involved, and are not at all inconsistent with the application of another rule to a substantially different state of facts. Where the street had been vacated before the granting, are the facts substantially different? The rule in such a case can be determined only by a consideration of relevant principles.

The fundamental doctrine is that the law jealously protects the freedom of contract because of the constitutional right and of an obvious public policy. Accordingly the owner can sell a lot adjoining a street, and part with or reserve the interest in the street, subject to the easement, as he sees fit. What he has done in a particular case depends necessarily upon the intention of the parties. Defendants' brief furnishes the true rule: "The idea of an intention in the grantor to withhold his interest in the road to the middle of it, after parting with all his right and title to the adjoining land, is never presumed. * * * It would require an express declaration to sustain such an inference." 3 Kent, Com. 349 (later editions, 433). Every case which sustains the rule and which involves a street, and not a vacated street, to which our attention has been directed or which we have been able to discover after diligent and extensive search, is in accord in basing the rule on the intention of the parties.

When a deed contains an express reservation, or the circumstances justify the inference of intention not to convey a fee to any part of the street, the vendor remains its owner. If, for example, the owner should transfer the fee to the street subject to the easement to one person, and afterwards transfer the adjoining lots to other persons, the implication would be that he did not intend to grant to the latter any interest in the land which had been a street.

Where there is neither a deed containing such an express reserva-

tion nor circumstances justifying the inference of intention to reserve, the courts are called upon to determine the legal effect of the conveyance. It is clear that they have imputed intention to transfer the land described by metes and bounds and also the fee to the middle of the street subject to the public easement. There is good reason for this presumption. The rule which construes the deed most strongly against the grantor applies. 2 Dembitz, Land Titles, p. 1441, § 1028. The parties contract with reference to and with at least constructive knowledge of the plat including the street. Such intention is the natural, and in the overwhelming majority of cases the actual, one.

The rule is compelled by incontrovertible public policy. The owner of the land platted usually becomes entirely disassociated with the title to the land sold and has neither a proximate interest in nor a practical use for the qualified fee in the street. The interest of the vendee therein is immediate. It has direct and substantial value to him. Indeed, as Cole, J., said in Kimball v. City, 4 Wis. 321, 331, the lots would be "comparatively useless" without the implication of conveyance to the middle of the street. He is logically entitled to improve the property as he chooses. It conduces to the best use of the premises to allow him to do so in reliance on access to the street on the ground itself and for light and air above. So long as the land is used as a street these rights would be protected, irrespective of who owned the fee. But upon vacation of the street these rights would be legally destroyed unless the vendee had the fee. It is much more reasonable to vest that fee in him than in the usually remote party who originally platted the land. To allow the vendor to retain the fee would be a serious embarrassment to alienation and improvement of property which it consists with public policy to favor. On the other hand, the state itself is concerned, e. g., as to who should determine and pay for improvements to the street made under the power of taxation to be paid for in some form of local assessment. The owners of the lots adjoining the street are the natural ones to determine whether improvements should be made and what their character should be. They are the ones who logically would be, and who are, required to discharge the assessment levied

for the improvement determined upon. Upon vacation of the street, they are naturally entitled to the street in its improved condition. Other practical considerations justify the reasonableness of the rule.

Where, however, the street has been vacated while the original proprietor owns the lots in question, the situation is substantially different. On vacation of a street in a case like the one at bar, he owns lots 23 and 24 and the space between in fee simple. He can transfer the whole tract, or any part of it, or transfer lot 23 to any person, and lot 24 to another person, and the space between the two to a third person. It is immaterial in what order of time such transfers were made. If the strip was granted before the lots, the intention would be certain; if afterwards, equally clear. What had been a street would be mere land. It would be taxable as land and so descend. Its transfer would be subject to the appropriate section of the statute of frauds. That it was not numbered nor properly named on the plat would be wholly insignificant. The case would be the same as if no street had ever existed, and, instead of being designated as "street," the tract had been marked "sand hole," or "mound," or any other name, or had had no name. The land which had been a street assumed exactly the same legal status as any other land which had not been impressed with a public easement. There is neither mystery nor magic in the word "street." The easement of use is the significant fact.

When the easement ceases, there is no occasion nor justification for any imputation of intention. The parties would contract with reference to a record showing that no street existed, where the vacation proceedings are required to be recorded. Neither alienation nor improvement would be jeopardized by selling lots without the strip; merely less land would be sold to any one person. What had been a possible creator of local improvement assessments would become a possible subject of such public charge. When the reason for the rule ceases, the rule itself should cease. The courts do not indulge in unnecessary, artificial assumptions, nor make new contracts for parties who have definitely agreed upon its terms. This they would do if in such cases they should construe a deed to pass title to a

parcel of land distinct and different from what that contract accurately described.

In the instant case, before the transfer to either plaintiff or defendants, there were on record in the office of the register of deeds two recorded plats of this addition, namely, the plat originally filed and the plat required to be there filed, together with a transcript of the resolution canceling and vacating the street, which was required by section 117, pp. 24, 25 (3d Ed.) Charter of St. Paul, as a necessary condition to the validity of the ordinance. And it is here stipulated that the ordinance was valid. The defendants, therefore, had notice that there was no La Salle street, and contracted with reference to a record showing that the strip did not adjoin a street. This case did not involve any inconsistency, uncertainty or ambiguity of description of the premises transmitted to the plaintiff or to the defendants. The metes and bounds on the plat, it is conceded, would have been sufficient if the lot had been in the center, instead of the corner, of the block. That was its legal situation when the street was vacated. The rule that artificial monuments, like streets, prevail over courses and distances, has no application here, because there was no such permanent monument as a street in existence, and because the description in the instruments and proceedings by which title was transferred was clear, complete, and consistent. Cf. Nicolin v. Schneiderhan, 37 Minn. 63, 33 N. W. 33, and other cases.

The conclusion follows, on principle, that the fee to the strip belongs to plaintiff, if conveyed to him by valid deed.

The authorities are in conflict. In Hopkinson v. McKnight, 31 N. J. L. 422, the court said: "No authority has been produced for the proposition that the reference in a conveyance of land by definite metes and bounds to an alley or road, as abutting on the premises conveyed, where no such alley or road exists, can be construed to be a grant of such alley or road." There is, however, an elaborate opinion by Judge Taft to the contrary in Paine v. Consumers F. & S. Co., 71 Fed. 626, 19 C. C. A. 99. The facts there presented were similar to those at bar, except that "in nearly all the deeds * * * the description of the lots conveyed by reference to the plat closes with this phrase, 'subject to all legal highways.' * * * It is clear that

the grantors * * * supposed that they were parting with all their interest, not only in the land within these lot lines, but also in the street." The significant difference in the language of the deeds in that and in the instant case is emphasized by the expressed doctrine of the opinion that the intention of the parties controls. Plaintiff insists that the authorities relied upon do not support its general principle. Indeed, the only one involving similar facts, Lough v. Machlin, 40 Oh. St. 332, was decided contrary to the conclusion reached, and supports plaintiff's view. It was, more or less, successfully distinguished. Page 633 of 71 Fed., page 99 of 19 C. C. A. The other authorities cited support the general doctrine applicable where the transfer took place at a time when a highway was in existence. Certainly not Dawson v. St. Paul F. & M. Ins. Co., 15 Minn. 102 (136), 2 Am. Rep. 109, which is cited, nor any other decision of this court, justifies the conclusion there reached. The view which we have previously expressed herein does not seem to have been fully presented to the court and was not expressly considered. It is, we think, entirely consistent with and confirmed by these authorities.

Defendants rely only on the Kansas cases. Atchison v. Patch, 28 Kan. 471; Showalter v. Southern, 49 Kan. 421, 32 Pac. 42; Challiss v. Atchison, 45 Kan. 398, 25 Pac. 894. Under the Kansas statute, however, the certified plat vests the fee of such parcels of land as are therein named in the county in trust for the uses only therein named. G. S. (Kan.) 1901, § 4364, (which took effect 1868); Showalter v. Southern, supra. On the vacation of a street the title to the land does not revert to the owner. The city council may at any time order the street to be opened without expense or payment of damages. Laws (Kan.) 1881, p. 95, c. 37, § 34. "The city permits the lot owner provisionally and temporarily to hold and occupy the portion of the vacated street in front of his lot. Under those circumstances, we think it fair to consider that it becomes. as it were a part of the lot, something in the nature of an accretion to it, and, if so, then any conveyance of the lot takes with it this attached portion of the vacated street." Brewer, J., in Atchison v. Patch, supra. It is evident that the court intended that the right to use the property and not the actual title thereto passed with the

lot. See Challiss v. Atchison, supra. This consists with the well-settled principle that land is never appurtenant to land. Cf. Heinrich v. City, 125 Mo. 424, 28 S. W. 626, 46 Am. St. 495, 496. "It would be absurd," says Platt, J., in Jackson v. Hathaway, 15 Johns. 447, 8 Am. Dec. 263, speaking of a road adjoining land passed by grant, "to allow the fee of one piece of land, not mentioned in the deed, to pass as appurtenant to another distinct parcel, which is expressly granted by precise and definite boundaries." This view at all events justifies the judicial determination that these Kansas cases are not controlling because turning upon a peculiar statute. Sanchez v. Grace, 114 Cal. 295, 46 Pac. 2.

Van Winkle v. Van Winkle, 184 N. Y. 193, 77 N. E. 33, is entirely consistent with the conclusion here reached. In the first place, the description was ambiguous (page 206 of 184 N. Y., page 36 of 77 N. E.); in the second place, the whole doctrine of intention was viewed as here (page 205 of 184 N. Y., page 36 of 77 N. E.), and applied to a case in which the deeds were executed long before the street was discontinued (page 198 of 184 N. Y., page 33 of 77 N. E.). And see second section of syllabus. The same features distinguish Baltimore v. Gould, 67 Md. 60, 8 Atl. 754.

Nor does Gilbert v. Emerson, 60 Minn. 62, 61 N. W. 820, tend to strengthen defendants' position. That case involved the construction of a deed to swamp lands according to a plat. The reasoning of the court served to confirm the view herein previously taken that the rule applies only to conveyances of lots abutting on an actual street or alley. Buck, J., said at page 67 of 60 Minn., at page 822 of 61 N. W.: "No intent can therefore be inferred or presumed that the owner of block 159 intended, by conveying the same, to pass. the title to the whole alley * * * so as to include the unplatted space in controversy."

It is to be noted that strictly in accordance with the opinion here expressed this court has held that the right of a riparian owner upon navigable waters to improve the submerged lands out to the point of navigability, although originally incident to the riparian estate, may be separated therefrom, and be transferred to and enjoyed by persons having no interest in the original riparian estate. Han-

ford v. St. Paul & D. R. Co., 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L.R.A. 722, overruling Lake Superior Land Co. v. Emerson, 38 Minn. 416, 38 N. W. 200, 8 Am. St. 679. And see Bradshaw v. Duluth Imp. Mill Co., 52 Minn. 59, 53 N. W. 1066. Wait v. May, 48 Minn. 453, 461, 51 N. W. 471, 473, construed a deed of a lot to include riparian rights across a street, "in the absence of language in the deed or circumstances indicative of a contrary intention." That case and its reasoning tend to confirm the conclusion here reached on principle.

On the other hand, plaintiff relies, inter alia, upon Harris v. Elliott, 10 Pet. 25, 9 L. Ed. 333. In point of identity of facts— the lots were acquired in 1800 and the street vacated in 1801—the case is not, as the trial court remarked, "much in point." But it is a well-reasoned authority for the proposition that "land cannot be appurtenant to land." See 3 Rose's Notes on U. S. Reports 542–544.

The Iowa court has sustained the opinion herein previously reached on principle. Brown v. Taber, 103 Iowa, 1, 72 N. W. 416; Chicago v. Des Moines, 97 Iowa, 25, 65 N. W. 1017. Defendant insists that the significance of these cases is destroyed by the rule as to the effect of the dedication of streets by plat under the Iowa statute, similar to the Kansas statute, in that a plat conveys the highway in fee simple to the public. See Tomlin v. Cedar Rapids, 141 Iowa, 599, 120 N. W. 93. However, in Brown v. Taber, the court points out in the opinion that "no evidence was offered tending to show that the dedication of the street had been accepted. The title thereto did not vest in the city without acceptance. * * * As the conveyance was not accepted, the proprietors of the plat remained owners of the land included in the street. * * *" This case is therefore a specific authority.

Sanchez v. Grace, supra, defendants insist, was an opinion of a mere commission, and so far as it relates to the matter in controversy was mere dictum. On examination, however, it appears to us to be directly in point. In Overland v. Alpenfels, 30 Colo. 163, 69 Pac. 576, the court expressly stated that it was not required to pass upon the question now before this court. The whole reasoning, how-

ever, confirms the view previously herein expressed. The court points out as "too clear for argument" the right of the landowner, who has the fee to the street and the abutting lots, to separate the two estates or titles and to treat them as distinct or separate tracts or parcels. The decision expressly views the intention of the parties substantially as has hereinbefore appeared. And see 8 Am. Dec. 266. In Plumer v. Johnston, 63 Mich. 165, 173, 29 N. W. 687, 690, the court said: "The doctrine is well established that the grantee of a lot bounded upon a street or other highway takes to the center of such street, subject only to the public easement, unless something appears upon the plat, or in the terms of the conveyance, excluding the title from passing under a boundary so described. But this doctrine is limited, and is applied to actual highways, and not to mere paper highways." Darrow v. Village, 122 Mich. 229, 81 N. W. 262, is not in point.

The conclusion follows that the weight of authorities, and especially the later decisions, sustain the plaintiff's title as a valid deed to the premises.

The second question concerns plaintiff's title. Defendants insist that the deed through which plaintiff claims conveyed no title, because it was executed by Barnum in his capacity as a trustee under the will of Allie Hewitt, which did not avail to create a trust, but vested the property absolutely in Barnum as an individual. It appears, but not clearly or certainly, from the stipulated facts, the brief findings of the court, and its memorandum attached, that the point was not considered by it. The conclusion previously reached necessitates a new trial. New findings are necessary; for the findings made state as a conclusion of fact that defendants, not the plaintiff, are the owners of the premises, and do not detail the facts. New findings must be made, not by this court, but by the trial court. In view of the uncertainty of the record before us and the statements of counsel upon argument, we have concluded that it would not be proper for us to here determine the merits of this controversy. Defendants will have opportunity to fully present and argue the question at the time of the trial.

Reversed, and new trial ordered.

On February 11, 1910, a reargument was granted on the question whether the charter provision in force at the time of the vacation proceedings here involved was substantially different from the present provision of the charter, and in particular did not require the record of such proceedings in the register's office.

On March 11, 1910, after reargument, the following opinion was filed:

PER CURIAM.

In a motion for reargument defendants, among other things, challenge the correctness of the statement in the original opinion that "before the transfer to either plaintiff or defendants there were on record in the office of the register of deeds two recorded plats of this addition, namely, the plat originally filed and the plat required to be there filed, together with a transcript of the resolution canceling and vacating the street, which was required by section 117, Charter of St. Paul, as a necessary condition to the validity of the ordinance." [1] The court had been of impression that this fact had been conceded.

Upon reargument plaintiff insists that as a matter of fact, when defendants acquired the title, there were two plats on record in the office of the register of deeds, one being the original plat, in which La Salle street appeared as a public way, and the other the plat which located and divided the portion of La Salle street which had been vacated, together with a transcript of the resolution vacating the same. This statement he insists is literally true, and in proof thereof attaches to his brief what purports to be a certified copy of the plat recorded in the register of deed's office many years before defendants acquired their title.

It is unnecessary to pass upon a number of questions thus presented, because defendants' own brief insists that the charter provisions in force at the time of the vacation proceedings control this case and that they required that "a transcript of such resolution [of vacation] duly certified by the city clerk shall be filed for record and duly

[1] See page 285, supra.

recorded in the office of the register of deeds of the county of Ramsey." [1]  The stipulation, as has previously been stated, agreed that the street in question had been "duly vacated." It follows naturally from the stipulation that at least the transcript of the resolution had been recorded in the register's office. That was constructive notice of the vacation of the street to all persons in general, and to these defendants in particular.

·We must therefore adhere to the original opinion.

[1] Sp. Laws, 1874, p. 38, c. 1, subc. 4, § 8.      [2] Reported in 125 N. W. 264.

