## JOHN S. TUCKER v. C. P. MORTENSON.[1]

June 26, 1914.

Nos. 18,683—(202).

**Nonnavigable lake — title of abutting owner.**

1. An owner of land abutting upon a nonnavigable lake owns to the middle of the lake. This title to the bed of the lake passes by a deed of the shore land, unless a contrary intention appears.

**Same — meander line as boundary.**

2. A meander line will not ordinarily be considered the boundary of land bordering on such a lake, but the grantee of the shore land will take to the middle of the lake, even though the grant is described by metes and bounds with the meander line as one of the calls. The evidence in this case sustains

[1] Reported in 148 N. W. 60.

---

Note.—On the question of meander line as boundary, see note in 42 L.R.A. 510.

the findings of the trial court that West lake, on which respondent's land abuts, was still a lake when defendant received his deed.

**Separation of lake bed — intention.**

3. The fact that the owners of land abutting on an irregular lake exchange deeds, fixing their respective rights in the lake bed, is not conclusive of an intention to separate the lake bed from the shore land.

**Same.**

4. The use of part of the bed of the lake by a grantor after conveyance of the shore land is not conclusive of an intent that he should reserve the lake bed.

**Estoppel — evidence.**

5. The evidence sustains the trial court in refusal to find that defendant was estopped by representations as to his line to claim the portion of the lake bed adjacent to his land.

Application by John S. Tucker to the district court for Lincoln county to register title to certain land. C. P. Mortenson filed his separate answer objecting to the application and prayed that the lands lying within the meander lines of the meandered lakes described in his answer be not registered in the name of the applicant; that the ownership thereof be not determined until such lands be partitioned by decree of court binding on all owners of abutting lands; but if the court determined in this proceeding the title of applicant to the lands within the meander lines, then defendant prayed that the court determine the applicant had no title in the portion of the lakes belonging to defendant. The matter was heard before Olsen, J., who made findings and ordered that the title to the lands described in the findings be registered in the name of the applicant. The motion of applicant for a new trial was denied. From the judgment entered pursuant to the order for judgment, John S. Tucker appealed. Affirmed.

*Roberts & Strong* and *Louis P. Johnson,* for appellant.

*E. B. Korns,* for respondent.

HALLAM, J.

Defendant Mortenson bought, from John Moore, land on the shore of what was at one time West lake, a shallow nonnavigable lake.

His deed described the land by metes and bounds and made the meander line of the lake one of the boundary lines. The lake has now been drained and he claims a portion of the bed of the lake. After Mortenson had received his deed, applicant obtained from the widow of John Moore, who had succeeded to his holdings, a quitclaim deed, covering the portion of the bed of the lake claimed by Mortenson. The principal question in this case is, did the deed to Mortenson carry title to a proportionate part of the bed of the lake?

1. The rule is well settled that an owner of land abutting upon a nonnavigable lake owns to the middle of the lake, and that this title to the bed of the lake passes by a deed of the shore land, unless a contrary intention appears. The reasons have been so often stated that it would be supererogation to again state them here. Schurmeier v. St. Paul & Pac. R. Co. 10 Minn. 59 (82), 88 Am. Dec. 59; Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L.R.A. 670, 38 Am. St. 541; Castle v. Elder, 57 Minn. 289, 59 N. W. 197.

2. A meander line is not a line of boundary, but is designed primarily to point out the variations of the bank or shore. Railroad Co. v. Schurmeir, 7 Wall. 272, 19 L. ed. 74; Whitaker v. McBride, 197 U. S. 510, 25 Sup. Ct. 530, 49 L. ed. 857; Webber v. Axtell, 94 Minn. 375, 379, 102 N. W. 915, 6 L.R.A.(N.S.) 194. It will not ordinarily be considered the boundary of land bordering on a nonnavigable lake. If the meander line is not coincident with the actual shore line of the lake, but is so run as to leave a strip of dry land between them, the shore line and not the meander line controls. Schurmeier v. St. Paul & Pac. R. Co. 10 Minn. 59 (82), 88 Am. Dec. 59; Everson v. City of Waseca, 44 Minn. 247, 46 N. W. 405; Olson v. Thorndike, 76 Minn. 399, 79 N. W. 399; Hanson v. Rice, 88 Minn. 273, 92 N. W. 982. The rule that a grantee of land, bounded by a nonnavigable lake, takes to the middle of the lake, applies whether the land is described as a government lot (Schurmeier v. St. Paul & Pac. R. Co. 10 Minn. 59 [82], 88 Am. Dec. 59; Sherwin v. Bitzer, 97 Minn. 252, 106 N. W. 1046), or is described by metes and bounds, with the meander line as one of the calls (Sizor v. City of Loganport, 151 Ind. 626, 50 N. E. 377; Welch v. Browning, 115 Iowa, 690, 87 N. W. 430).

It is claimed that, at the time defendant Mortenson received his deed, there was no longer any lake in existence, and that, under such circumstances, the deed must be limited to the land specifically described. Applicant cites White v. Jefferson, 110 Minn. 276, 124 N. W. 373, 641, 125 N. W. 262, 32 L.R.A.(N.S.) 778, 784, in support of this contention. In that case it was held that the sale of a lot by number did not carry title to adjacent land which was within the lines of a vacated street. We need not determine whether the principle applied in White v. Jefferson applies to a conveyance of land adjacent to a dried up lake. The court found in substance that West lake was still a lake, in dry seasons dried up, and in wet seasons again filled with water. These findings are sustained by the evidence. West lake was, in legal contemplation, still a lake, and the rules as to conveyance of land bounded by nonnavigable lakes apply.

3. Prior to the conveyance from Moore to Mortenson the owners of land abutting on the lake had exchanged deeds, fixing their respective rights in the lake bed. This fact is not of controlling importance. The lake was drying up. Its drainage was doubtless contemplated, and was accomplished a few years later. The meander line was irregular. These abutting owners each owned a share of the lake bed not easily defined, and the fact that they fixed their respective rights therein is not inconsistent with the continued existence of the lake. Land formed by accretions may, of course, be separated from the shore land and conveyed by separate deed. Sherwin v. Bitzer, 97 Minn. 252, 256, 106 N. W. 1046; De Long v. Olsen, 63 Neb. 327, 88 N. W. 512. Whether it is so separated and whether any portion of the lake bed passes by a deed of the shore land is in all cases a question of intention. In re Robbins, 34 Minn. 99, 24 N. W. 356, 57 Am. Dec. 40; White v. Jefferson, 110 Minn. 276, 124 N. W. 373, 641, 125 N. W. 262, 32 L.R.A.(N.S.) 778, 784. This exchange of deeds was by no means conclusive of any intention to separate the lake bed from the shore land.

4. There is some evidence that after the deed was given to Mortenson, Moore, with the acquiescence of Mortenson, fenced off for his own use some of the bed of the lake now claimed by Mortenson. This may have tended to show an intent that Moore should reserve the

bed of the lake from the deed to Mortenson, but it was not conclusive of such intent.

5. Applicant claims that, before he took his quitclaim deed of the lake bed from Mrs. Moore, Mortenson represented to his agent that he owned no part of the bed of the lake, that applicant purchased in reliance on this representation, and that Mortenson is now estopped to claim any part of the lake bed. This testimony is denied by Mortenson. The court refused to find in accordance with the contention of applicant, and there is ample evidence to sustain the court in such refusal.

Judgment affirmed.